UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MATTHEW TORDA, ANNA TORDA, And JOSEPH TORDA, <br> Plaintiffs, <br><br> vs. <br><br> STEPHE SUZANNE KASANOF a/k/a STEPHANIE KAGARNOF a/k/a STEPHANIE TORDA a/k/a STEPHANIE S. KATZ, TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, and COLLEGE RETIREMENT EQUITIES FUND <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION NO.: 04-10622-GAO |

## **FIRST AMENDED COMPLAINT**

### **Introduction**

1.      This is an action in equity and for declaratory judgment, for the imposition of a

constructive trust, and for injunctive relief commenced by the three (3) children of the late

Walter Ira Torda. Walter Ira Torda died on November 17, 2003. The subject matter of this action

concerns the enforcement of a Separation Agreement dated July 25, 2003 entered into by and

between Walter Ira Torda and Stephanie Suzanne Kasanof in which Stephanie Suzanne Kasanof

waived any interest in all of Walter Ira Torda's property, including personal property acquired

thereafter, except as to property specifically set forth therein.  The relief sought by the Plaintiffs

is: (a) a declaration of their rights, duties, status and other legal relations as to the parties in this

action regarding a certain life insurance policy, annuities and an individual retirement account

owed by the decedent Walter Ira Torda; (b) the establishment of a constructive trust regarding the life insurance, annuities, and individual retirement account proceeds in order to prevent unjust enrichment; and (c) a permanent injunction ordering Stephanie Suzanne Kasanof to take any and all necessary actions to waive her rights under the life insurance policy, annuities, and individual retirement accounts owned by Walter Ira Torda at the time of his death in accordance with her waiver pursuant to the parties' Separation Agreement.

### Parties

2.      The Plaintiff Matthew Torda is an individual who resides at 111 Stedman Street, Brookline, County of Norfolk, Massachusetts. Matthew was one of Walter Ira Torda's children.

3.      The Plaintiff Anna Torda is an individual who resides at 213 Pleasant Street, Apt. 4, Brookline, County of Norfolk, Massachusetts. Anna was one of Walter Ira Torda's children.

4.      The Plaintiff Joseph Torda is an individual who resides 111 Stedman Street, Brookline, County of Norfolk, Massachusetts. Joseph was one of Walter Ira Torda's children.

5.      The Defendant Stephanie Suzanne Kasanof a/k/a Stephanie Kagarnof a/k/a, Stephanie Kasanot a/k/a Stephanie Torda a/k/a Stephanie S. Katz ("Stephanie") is an individual who, on information and belief, resides at 249 East 48th Street, New York, New York.

6.      The Defendant Teachers Insurance and Annuity Association of America, ("TIAA") is, on information and belief, a duly organized corporation authorized to issue and administer life insurance policies with a regional office located at 28 State Street, Boston, County of Suffolk, Massachusetts.

7.      The Defendant College Retirement Equity Fund ("CREF") is, on information and belief, a duly organized corporation with a regional office located at 28 State Street, Boston,

County of Suffolk, Massachusetts. On information and belief, TIAA and CREF (hereinafter "TIAA-CREF") are authorized to issue and administer annuities.

## Statement of Facts

8.    Walter Ira Torda ("Walter") and Stephanie were married on September 15, 2000 in Brookline, Massachusetts and last lived together on or about August 20, 2002 in Brookline, Massachusetts. No children were born to Walter and Stephanie, prior to, during or after their short-term marriage.

9.    Walter, however, has three (3) children from his first marriage, the Plaintiffs Matthew, Anna and Joseph who are ages 22, 19 and 18 respectively. Walter was previously married to Dorothy M. Torda, mother of Walter's three children.

10.    On or about March 25, 2003, Stephanie filed a Complaint for Divorce in Norfolk Probate and Family Court, Docket No. 03D0407-DV1. Defendant filed his Answer on or about April 29, 2003.

11.    In conjunction with the divorce, the parties entered into a Separation Agreement ("Agreement") dated July 25, 2003, a copy of which is attached hereto and incorporated herein as Exhibit "A". The parties agreed that ". . .[the] Agreement [was] not being executed by either party in consideration of or for the obtaining a divorce" (Agreement 5th ¶) and was to ". . . retain its independent significance as a contract legally binding upon both parties". Agreement, Article V.

12.    Both Walter and Stephanie were represented by counsel when they signed the Agreement. The Agreement states that Walter and Stephanie were "...advised fully and fairly as to all facts and circumstances [set forth in the Agreement]... and...each freely and fully accepts the terms, conditions and provisions [of the Agreement], and enters into [the] Agreement

voluntarily and without coercion whatsoever". Agreement, 7th ¶. The parties further represented

that "[e]ach party has carefully considered the income, financial resource, contributions to the

marriage, and liabilities and expenses of himself or herself and of the other and all other factors

enumerated in M.G.L. Ch. 203 Section 34. . .", and they were afforded the opportunity for full

and formal discovery with regard to the financial circumstances of the other. Agreement, 8th ¶.

The parties declared and acknowledged that "...the terms, conditions and provisions [of the

Agreement] to be fair, adequate and reasonable." Agreement, 7th ¶.

13.    In recognition of the parties' short-term marriage, both Stephanie and Walter:

> ...waive[d], renounce[d] and relinquishe[d] on to the other, their
> respective heirs, executors, administrators and assigns forever, all
> and every interest of any kind (sic) or character which either may
> now have or may hereafter acquire in any real or personal property
> of the other, whether now owned or hereafter acquired by either.
> Agreement, Article II, WAIVER OF ESTATE CLAIM, A.

The parties further agreed that:

> "...they will not at any time or under any circumstances or under
> any other statutory authority or case law of this jurisdiction, or any
> other, make any demands or claims against the other party or his or
> her estate for alimony, support, maintenance, property
> assignments, conveyance, transfer or otherwise." Agreement,
> Exhibit "E"

14.    At the time Walter and Stephanie entered into the Agreement, Walter was the

owner of certain personal property including a TIAA life insurance policy (no. 07654676) ("life

insurance"), TIAA-CREF annuities (policy nos. B7832575, K6800656, L0567747, 26172346,

Q7832572, J6800658, M0567745, 16172348, 28886372 and 18886374) ("annuities"), and a

Smith Barney citigroup individual retirement account (account no. 345-67125-16 068) ("IRA").

Pursuant to the Agreement, Stephanie waived any interest of any kind in or to this personal

property consisting of said life insurance, annuities and IRA, specifically including personal

property thereafter acquired, which includes proceeds of life insurance, annuities and IRA. (See Agreement, Article II, WAIVER OF ESTATE CLAIM, A.)

15.     On information and belief, Stephanie claims that she is entitled to the proceeds of the life insurance, a percentage of the annuities, and a portion of the IRA contrary to the clear and unambiguous language of the Agreement. Although Stephanie was named as the beneficiary of the life insurance and a partial beneficiary of the annuities and the IRA, Stephanie subsequently waived her right to claim any interest in Walter's property consisting of the life insurance, annuities, and IRA.

16.     Plaintiff Joseph Torda was named the Contingent Beneficiary of the life insurance.  Joseph Torda assigned two thirds (2/3) of his interest in the life insurance, one third (1/3) to each of his siblings, Plaintiffs Matthew Torda and Anna Torda.

17.     Defendants TIAA and CREF, through their counsel, in recognition of the conflicting claims to the proceeds of the life insurance policy and annuities determined it is necessary and appropriate to obtain an interpleader, which they have done by way of a counterclaim and cross-claim in this action.   Prior to seeking an interpleader, TIAA's and CREF's counsel encouraged the parties to reach a settlement agreement as to the division of the life insurance and annuity proceeds as being "appropriate and beneficial for all adverse claimants".  See Exhibit "B".  Notwithstanding the Plaintiffs' efforts to engage is a good faith negotiations to resolve the parties' dispute,  Stephanie's counsel refused to discuss settlement.

### Causes of Action

### Count I - Declaratory Judgment

18.     The Plaintiffs repeat and reassert the allegations contained in paragraph 1 through 17 as though fully set forth herein.

19.    An actual controversy has arisen as to the rights, duties, status and other legal relations of the parties pursuant to the Agreement.

### Count II - Constructive Trust

20.    The Plaintiffs repeat and reassert the allegations contained in paragraph 1 through 19 as though fully set forth herein.

21.    In order to prevent unjust enrichment of the Defendant Stephanie Suzanne Kasanof a/k/a Stephanie Kagarnof a/k/a Stephanie Kasanot a/k/a Stephanie Torda a/k/a Stephanie S. Katz given her waiver of any interest in any property owned by the deceased Walter Ira Torda, a constructive trust should be established in favor of Plaintiffs regarding the proceeds of TIAA life insurance, and Stephanie's portion of the TIAA-CREF annuities and the IRA owned by Walter Ira Torda at the time of his death.

WHEREFORE, the Plaintiffs pray this Honorable Court as follows:

1.    After trial, enter an order declaring that Stephanie Suzanne Kasanof a/k/a Stephanie Kagarnof a/k/a Stephanie Kasanot a/k/a Stephanie Torda a/k/a Stephanie S. Katz has no rights or claims to any of the proceeds of the TIAA life insurance, the TIAA-CREF annuities policies, and the IRA that were owned by Walter Ira Torda at the time of his death, and all proceeds of said life insurance, annuities and IRA shall be paid equally to Matthew Torda, Anna Torda and Joseph Torda;

2.    After trial, enter an injunction that Stephanie Suzanne Kasanof a/k/a Stephanie Kagarnof a/k/a Stephanie Kasanot a/k/a Stephanie Torda a/k/a Stephanie S. Katz be ordered to take any and all necessary actions to waive, renounce and relinquish her rights to the TIAA life insurance, the TIAA-CREF annuities, and the IRA including, but not limited to, executing any

necessary spousal waivers as required by law, in accordance with her waiver under the

Agreement;

      3.      After trial, if necessary and appropriate, establish a constructive trust regarding

any proceeds of the life insurance policy, annuities and IRA owned by Walter Ira Torda at the

time of his death in favor of the Plaintiffs; and

      4.      Such further orders as this Court deems just and appropriate.

> Matthew Torda,
> Anna Torda and Joseph Torda,
> By their attorneys,
> RUDOLPH FRIEDMANN LLP

6/16/04
Date

James S. Singer
BBO # 464560
92 State Street
Boston, MA 02109
617-723-7700

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon (~~each party~~

~~appearing pro se~~ and) the attorney of record for each other party by mail (~~by hand~~) on this _____

day of June, 2004.

James S. Singer

Exhibit "A"

## SEPARATION AGREEMENT

AGREEMENT made this 25th day of July, 2003, by and between Stephanie Suzanne Kasanof (hereinafter the "Wife") of New York, New York, and Walter Torda (hereinafter the "Husband") of Brookline, Massachusetts, collectively referred to herein as the "Parties".

## STATEMENT OF FACTS

The Husband and Wife were married on September 15, 2000, in Brookline, Massachusetts, and last lived together on September 17, 2002, in Brookline, Massachusetts.

The Husband is a physician. He is 55 years old and is currently disabled as the result of a fall in 2002.

The Wife is a psychotherapist. She is 54 years old and suffers from Multiple Sclerosis.

There are no children born of this marriage.

The Wife has filed a Complaint for Divorce, being Norfolk Probate Court Docket No. 03D0407-DV1. It is the intention of the parties that this Agreement shall be filed therewith and incorporated in any divorce judgment granted pursuant thereto. However, this Agreement is not being executed by either party in consideration of or for the obtaining of a divorce.

The Husband and Wife declare and acknowledge that each of them understands the position, circumstances and prospects of the other, and the terms, conditions, and provisions herein to be fair, adequate, and reasonable. The Husband has been represented by counsel of his own choosing, Barbara E. Rodriguez of Boston, Massachusetts, and the Wife is being represented by counsel of her own choosing Sandra C. Steele of Boston, Massachusetts. After being advised fully and fairly as to all facts and circumstances herein set forth and after having read this Agreement line by line, each freely and fully accepts the terms, conditions and provisions hereof and enters into this Agreement voluntarily and without any coercion whatsoever.

Each party has carefully considered the income, financial resource, contributions to the marriage, and liabilities and expenses of himself or herself and of the other and all other factors enumerated in M.G.L. Ch. 208 Section 34. Each party has been afforded the opportunity for full and formal discovery proceedings of any and all pertinent data with regard to the financial circumstances of the other and after having been such opportunity, the parties being fully cognizant of their rights, waive their respective rights to such



further discovery. Any prejudice suffered by either the Husband or the Wife as a result of failure to undertake such discovery shall not be deemed to have been a fraudulent misrepresentation on the part of the other party, and shall not be sufficient to justify the voiding of the contractual obligations and rights of the parties under the within Agreement.

The parties acknowledge that they have ascertained and weighed sufficient facts and circumstances relative to themselves and relative to the other party and that they have given due consideration to such facts and circumstances and clearly understand and assent to all the provisions herein, without any condition whatsoever.

This Agreement is made in order to settle and determine:

a. Whether and to what extent payments for support and maintenance should be made to the Husband or Wife;

b. Whether and to what extent all or any part of the estate of the Husband or Wife should be assigned to the other in consideration of the provisions of Massachusetts General Laws Ch. 208 s. 34; and

c. All other rights and obligations arising from the marital and parental relationship.

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises, agreements and covenants hereinafter contained, the Husband and Wife mutually agree as follows:

## I. SEPARATE STATUS

A. From the date hereof, the Husband and Wife may continue to live separate and apart from each other for the rest of their lives, as fully as if sole and unmarried, and free from the authority of, or interference by, the other.

B. The Husband and Wife each warrant, represent, and agree that neither of them will enter into any contract or obligation or incur any debt in the name of the other, nor will either of them enter into any transaction of such a nature as would entitle any third party to seek recourse against or obtain a judgment against the other. The Husband and Wife further covenant at all times to hold the other free, harmless and indemnified from and against all debts, charges or liabilities hereafter contracted or incurred by him or her in breach of the provisions of this paragraph and from any and all attorney's fees, costs and expenses incurred by the other as a result of any such breach.

## II. WAIVER OF ESTATE CLAIM

A. Except as provided herein, the Husband and Wife each hereby waives any right at law or in equity to elect to take against any last Will made by the other, including all rights of dower or of courtesy, and hereby waives, renounces and relinquishes unto the other, their respective heirs, executors, administrators, and assigns forever, all and every interest of any kin or character which either may now have or may hereafter acquire in or to any real or personal property of the other, whether now owned or hereafter acquired by either. This provision, however, shall not act as a waiver of any gift or devise which a party shall make to the other hereafter.

B. Except as provided herein the Husband and Wife shall each have the right to dispose of his or her property at Will, or otherwise, in such manner as each may in his or her uncontrolled discretion deem proper; and neither will claim any interest in the estate of the other, except to enforce any obligation imposed upon said estate by this Agreement.

## III. MUTUAL RELEASE

Except as relates to an action for divorce or as otherwise herein provided, the Husband and Wife each hereby releases and forever discharges the other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law and in equity, which either of them has ever had, now has, or may hereafter have against the other, upon or by reason of any matter, cause or thing up to the date of this Agreement, including but not limited to claims against the property of the other, it being the intention of the parties that henceforth there shall exist as between them only such rights and obligations as are specifically provided for in this Agreement.

## IV. ENTIRE AGREEMENT

The Husband and Wife agree that, in executing this Agreement, there have not been made, and that they have not relied upon, any promises, warranties or representations except as are expressly contained herein. No oral statement or prior written matter, extrinsic to this Agreement, shall have any force or effect. The Husband and Wife have incorporated into this agreement their entire understanding, and they each agree to accept the provisions set forth in this Agreement in full satisfaction and discharge of all claims, past, present and future, which either party may have against the other, and which in any way arise out of the marital relationship.

## V. SURVIVAL OF AGREEMENT

At any hearing to divorce the parties, a copy of this Agreement shall be submitted to the Court and shall be incorporated into the judgment of divorce, but shall not be merged therein, and shall survive same and retain its independent significance as a

contract legally binding upon both parties. However, this Agreement is not intended in any way to abrogate or usurp the continuing jurisdiction of the Probate and Family Court over the minor child and all matters connected with her best interests and welfare.

## VI.  STRICT PERFORMANCE

The failure of the Husband or of the Wife to insist in any instance upon the strict performance of any of the terms contained in this Agreement shall not be construed as a waiver of such term or terms for the future, and such terms shall nevertheless continue in full force and effect.

## VII.  VALIDITY

In the event any part of this Agreement shall be held invalid, such invalidity shall not invalidate the whole Agreement, for so long as the remaining provisions of this Agreement continue to reflect fairly the intent and understanding of the parties in executing this Agreement.

## VIII.  GOVERNING LAW

This Agreement shall be construed and governed according to the laws of the Commonwealth of Massachusetts.

## IX.  MODIFICATION

The terms of this Agreement shall not be altered or modified except by a written instrument signed and acknowledged by both the Husband and the Wife.

## X.  EXHIBITS

There are annexed hereto and hereby made a part of this Agreement Exhibits A, B, C, D, E, and F.  It is understood and agreed by the Husband and Wife that the provisions contained in said Exhibits are in complete and final satisfaction of the respective rights and liabilities of the parties referred to in the "Statement of Facts" contained in this Agreement.  The Husband and Wife further agree to be bound by and to perform and carry out all of the terms of the said Exhibits to the same extent as if each of said Exhibits were fully set forth in the text of this Agreement.

## XI.  BREACH OF AGREEMENT

The Husband and Wife each agree to fully indemnify and hold the other harmless on account of any liability which may be occasioned by the breach of any obligation contained in this Agreement, including any and all reasonable attorney's fees, costs and expenses incurred as a result of such breach.

LT

SSF

IN WITNESS WHEREOF, the parties have set their hands and seals in five original counterparts on the day and year first written above.

_____
Stephanie Suzanne Kasanof, Wife

_____
Walter Torda, Husband

STATE OF NEW YORK  *COUNTY OF NEW YORK*

*July 22,*           , 2003

, ss.

Then personally appeared the above-named Stephanie Suzanne Kasanof, Wife, acknowledged the foregoing instrument to be her free act and deed, before me

GRAHAM E. BARKHAM
Notary Public, State of New York
No. 60-0161900
Qualified in Westchester County
Commission Expires March 30, 1993

_____
, Notary Public

My Commission Expires:

*Suffolk*, ss.    COMMONWEALTH OF MASSACHUSETTS  *July 25*    , 2003

Then personally appeared the above-named Walter Torda, Husband, and acknowledged the foregoing instrument to be his free act and deed, before me

_____
, Notary Public

My Commission Expires: 4/22/05

WT
SSK

## EXHIBIT "A"

## ALIMONY

Each party hereby acknowledges his or her obligation to be self-supporting. Each party possesses the resources to be self-supporting. Therefore, each party hereby waives alimony and support from the other, present and future.

WT
SSK-

## EXHIBIT "B"

## INSURANCE

The Husband currently provides the Wife with health coverage through his family policy. The Husband agrees that he will maintain whatever existing medical insurance plan is presently in existence for the benefit of the Wife for as long a period as is permitted under the Laws of the Commonwealth of Massachusetts and the subject insurance plan so long as it is at no cost to him. If he is unable to maintain coverage for the Wife at no extra expense, he shall cooperate with her in maintaining coverage for her through his group policy, and the Wife shall bear the additional premium.

## EXHIBIT "C"

## ASSETS AND LIABILITIES

I.   ASSETS:

    A.   **Real Property**

        The marital residence has been sold and the parties have equitably divided the net proceeds.

    B.   **Personal Property**

        The parties have divided all their personal property. The Husband agrees to ship the two portraits of the Wife to her brother in Connecticut. The Wife agrees to pay the shipping charges. The Wife agrees to return her engagement ring to the Husband.

    C.   **Individual Assets**

        The Parties shall retain all assets which are held in their name. The Husband shall pay $2,000.00 to the Wife for her equity in her automobile once she has transferred title to the Husband.

II.   **LIABILITIES**

    A.   The Husband also agrees to be fully and solely responsible for any liabilities incurred by him subsequent to the date on which the parties separated, and any liabilities presently outstanding in his name.

    B.   The Wife agrees to be fully and solely responsible for any liabilities incurred by her subsequent to the date on which the parties separated, and any liabilities presently outstanding in her name.

    C.   Each party warrants to the other that he or she has no individual liabilities which ante-date the separation of the parties for which the other is liable.

## EXHIBIT "D"

## TAXES

1.      Each party represents and warrants to the other that he or she has duly paid all income taxes, state and federal, attributable to him or her on all joint returns heretofore filed by the parties; that to his or her knowledge no interest or penalties are due or owing with respect thereto, no tax deficiency proceeding is pending or threatened thereon, and no audit thereof is pending.

2.      If there is a deficiency assessment in connection with any joint returns (heretofore or hereafter filed), the party notified thereof shall notify the other immediately in writing. The party whose error or omission caused the deficiency shall pay the amount ultimately determined to be due thereon, together with interest and penalties, and any and all expenses that may be incurred if he or she decides to contest the assessment.

## EXHIBIT "E"
## SATISFACTION OF RIGHTS

In light of Massachusetts General Laws, Chapter 208, Section 34, the parties acknowledge that they each have rights in the other's individually- owned assets, and that the provisions of this Agreement comprise an equitable distribution of the marital estate in accordance with the provisions of the aforesaid statute. The Husband and Wife each hereby waive all claims and rights they may have against the other party for support of any kind from the other party, separate maintenance or alimony, and further waive all claims and rights they may have under Massachusetts General Laws, Chapter 208, Section 34, as amended, intending that their only rights shall be those set forth herein.

Upon the execution of the within Agreement, the Husband's and Wife's obligations to the other for alimony, support, transfer, conveyance, gift, assignment or other obligations under Massachusetts General Laws, Chapter 208, Section 34 shall cease entirely and the Husband and the Wife shall forever be discharged with respect thereto. The Husband and the Wife each declare, state, represent and acknowledge that they are each aware of their rights under Massachusetts General Laws, Chapter 208, Section 34, as amended, and the Husband and the Wife each accept the covenants of the other party contained in the within Agreement as complete satisfaction of their rights thereunder. The Husband and the Wife each agree that they will not at any time or under any circumstances or under any other statutory authority or case law of this jurisdiction or any other, make any demands or claims against the other party or his or her estate for alimony, support, maintenance, property assignments, conveyance, transfer, or otherwise. If either party becomes obligated to pay money or transfer property to the other at any time in the future as a result of the breaching party's violation of this paragraph, then the breaching party shall indemnify the other party from, hold the other party harmless for, and repay to the other party any such monies or property, as well as the other party's attorney's fees, costs, and expenses incurred by him or her in resisting or defending any such claims or demands made by the breaching party, or by any one claiming by, through, or under him or her for such monies or property.

EXHIBIT "F"

MISCELLANEOUS

Each party agrees to be responsible for his or her attorney's fees incurred in the negotiation of this Agreement and in connection with their divorce.

Exhibit "B"

**TIAA CREF**

Edward L. Hancock
8500 Andrew Carnegie Blvd
SSC-B2-08
Charlotte, NC 28262
Ehancock@Tiaa-Cref.org
704-988-1247, 704-988-1615 Fax

February 24, 2004

Sandra C. Steele
Attorney at Law
Law Offices of Sandra C. Steele
44 School Street, 6th. Floor
Boston, MA 02108

Judith A. Jarashow
Attorney at Law
80 Ridge Road East
Waban, MA 02468

Re: Walter Torda Policy 0-765467-6; TIAA Annuity Nos. 2617234-6, 2888637-2, 1617234-8 and 1888637-4

We want to acknowledge that we received the Police Report and the Coroner's Report of Walter Torda and we have concluded that part of our investigation surrounding missing data from Mr. Torda's Death Certificate.

On February 18, 2004 we received a letter from Judith Jarashow in which she discussed an issue which I raised concerning Stephanie's "expectancy" as a beneficiary on Walter's life insurance policy and annuity contracts, as being personal property in nature and as such could or was waived in the Separation Agreement.

In this regard issues have been raised which would be more appropriately suited for a sitting court judge to review. The division of property discussions and all written prepared documents that preceded the final Separation Agreement of Stephanie Kasanof and Walter Torda should be reviewed in terms of existing Massachusetts Statutes and case law to see what exact property rights were and were not waived during the negotiation phase of this Separation Agreement.

It would be appropriate and beneficial for all adverse claimants of Walter Torda's annuity contracts and life insurance policy to reach a settlement agreement on the division of property presently held by TIAA-CREF.

If a mutual satisfactory agreement cannot be reached in within 20 days of this letter, then we will be forced to petition in interpleader to resolve the conflicting claims to the proceeds of the life insurance policy and the annuities of the decedent. In conjunction with the petition in interpleader, we would deposit the funds into the registry of the court and seek to offset our legal fees in pursuing the interpleader.

Yours Truly,

Edward L. Hancock