UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSSACHUSETTS

| | |
|---|---|
| MATTHEW TORDA, ANNA TORDA, <br> and JOSEPH TORDA, <br>            Plaintiffs, <br><br> vs. <br><br> STEPHANIE SUZANNE KASANOF, <br> a/k/a STEPHANIE KAGARNOF, a/k/a <br> STEPHANIE TORDA, a/k/a STEPHANIE <br> S. KATZ; TEACHERS INSURANCE <br> AND ANNUITY ASSOCIATION OF <br> AMERICA and COLLEGE RETIREMENT <br> EQUITIES FUND, <br>            Defendants. | Civil Action No. 04-10622-NMG |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION OF DEFENDANT AND PLAINTIFF IN COUNTERCLAIM STEPHANIE SUZANNE KASANOF FOR PARTIAL SUMMARY JUDGMENT

### I.    INTRODUCTION

Plaintiffs Matthew Torda, Anna Torda and Joseph Torda ("Plaintiffs") hereby submit this Memorandum in opposition to the Motion of Defendant and Plaintiff-in-Counterclaim Stephanie Suzanne Kasanof for Partial Summary Judgment ("Motion" or "Motion for Partial Summary Judgment"). In support of their opposition, the Plaintiffs state:

(1)    Kasanof's Motion is, at best, premature, because the parties have not yet engaged in any discovery, including, at a minimum, the discovery disclosures required by Rule 26 of the Federal Rules of Civil Procedure and thus, (a) the Plaintiffs are unable to provide an informed response to Kasanof's assertions, in her Memorandum of Defendant and Plaintiff in Counterclaim Stephanie Suzanne Kasanof in Support of Her Motion for

Partial Summary Judgment ("Memorandum"), Statement of Undisputed Facts, ¶¶5 and 7, regarding how and from whom the decedent, Walter Torda ("Torda"), obtained the benefits at issue in this case; *see* Affidavit of James S. Singer, attached hereto as Exhibit "1"; and, (b) therefore, the Plaintiffs cannot either admit or dispute material facts germane and essential to Kasanof's claim regarding the type of benefits at issue in this matter, which facts are essential to determining whether Kasanof's claims are governed by state or federal law; and,

(2)    Assuming, as Kasanof does, that Massachusetts law applies to all of the benefits at issue, the legal authorities cited by Kasanof in her Memorandum do not stand for the propositions upon which she bases her Motion.

For these reasons, as will be discussed in detail below, the Plaintiffs respectfully submit that Kasanof's Motion should be denied on the grounds that it is premature; subject (upon discovery) to genuine dispute of material facts; and, without support in the law.

## II.    FACTS

### A.    Plaintiffs' Response to Kasanof's Statement of Undisputed Facts

The Plaintiffs respond to Kasanof's Statement of Undisputed Facts as follows.[1]

¶1    No dispute. Plaintiffs' First Amended Complaint ("Complaint"), ¶8.

¶2    No dispute. Complaint, ¶10.

---

[1] The Plaintiffs also respectfully submit that Kasanof's Motion should be denied on the grounds that ¶¶ 1, 2, 5, 6, 7, 8, 9 and 10 of Kasanof's Statement of Undisputed Facts do not comply with the requirements of District of Massachusetts Local Rule 56.1 that each undisputed fact alleged be supported by "page references to affidavits, depositions, and other documentation." The failure to include such references is grounds for denial of the Motion; Rosario v. Brooks, 877 F.Supp. 765, 769 (D.Mass.1995); Fed.R.Civ.P. 56(c); Rand v. M/A-Com. Inc., 824 F.Supp. 242, 266 (D.Mass.1992), or, minimally, the striking of all such facts that lack the requisite references to the record.

¶3    No dispute; however, the Plaintiffs add that the Separation Agreement ("Agreement") also provides that, "this Agreement is not being executed by either party in consideration of or for the obtaining of a divorce[,]" Agreement, Statement of Facts, ¶5, and that, "At any hearing to divorce the parties, a copy of this Agreement shall be submitted to the Court and shall be incorporated into the judgment of divorce, but shall not be merged therein, and shall survive same and retain its independent significance as a contract legally binding upon both parties." Id., Article V; Complaint, ¶11.

¶4    No dispute. Agreement, Article II.

¶5    The Plaintiffs do not dispute that at the time of his death Torda owned a life insurance policy covering his own life, which they believe to have been in the amount of $750,000.00, but state that it is not clear from Kasanof's assertions what is meant by the phrase, "as an incident of his employment."

¶6    The Plaintiffs state that the purported facts set forth by Kasanof in this paragraph are not facts but a conclusion of law on the issue to be decided by the Court on Kasanof's Motion; therefore the Plaintiffs need not respond except to state that, as a matter of law, they disagree with Kasanof's contention. Complaint, ¶¶15, 16.

¶7    The Plaintiffs do not dispute that at the time of his death Torda had an annuity (actually, several annuities) and an IRA, but state that it is not clear from Kasanof's assertions what is meant by the phrase, "as an incident of his employment." Complaint, ¶¶14, 15, 16.

¶8    The Plaintiffs state that the purported facts set forth by Kasanof in this paragraph are not facts but a conclusion of law on the issue to be decided by the Court on

Kasanof's Motion; therefore the Plaintiffs need not respond except to state that, as a matter of law, they disagree with Kasanof's contention. Complaint, ¶ 14,15 and 16.

¶9   No dispute, except that the Plaintiffs further state that Kasanof and Torda separated in or about September, 2002. Complaint, ¶9; Agreement, Statement of Facts, ¶1.

¶10   No dispute. Complaint, ¶¶2, 3, 4.

Moreover, in Argument section of her Memorandum, Kasanof asserts, without any reference to the record or other support (factual or legal), that Torda had no intention of changing the beneficiary designation on the benefits at issue. This unsupported assertion, therefore, should be stricken from consideration of Kasanof's Motion. In the event, however, the court deems the matter of Torda's intent concerning the beneficiary designation to be an issue of fact relevant to its determination of the issues raised by Kasanof's Motion, the Plaintiffs respectfully dispute Kasanof's assertions in this regard, and further state that the Special Administrator of Torda's Estate found change of beneficiary forms for the TIAA-CREF life insurance and annuities in Torda's papers, that were sent to Torda on November 7, 2003, less than two weeks before his death. *See* Affidavit of Judith Jarashow, attached hereto as Exhibit "2".

## B.   Plaintiffs' Statement of Additional Undisputed Facts

1.   In that each and every provision of the parties' Separation Agreement constitutes undisputed fact, the Plaintiffs reference Exhibit "A" to the Complaint and incorporate by reference herein as additional undisputed facts, the parties' Separation Agreement dated July 25, 2003, with like force and effect as if each and every term and provision thereof was recited in its entirety in this document.

III.    **LEGAL ARGUMENT & DISCUSSION**

Kasanof asserts that because: (a) the parties' mutual waiver of rights and claims in the Agreement is merely a "general" waiver, i.e, lacks reference to the specific benefits; and (b) Torda never formally changed the beneficiary designations so as to remove Kasanof as the named beneficiary before his death; the "general" waiver, therefore, is insufficient, as a matter of law, to divest Kasanof of entitlement to such benefits, and, thus requires the entry of partial summary judgment in her favor. Kasanof also argues that, as a matter of law, Torda's failure to effectuate a formal change of beneficiary as to these benefits gives rise to the *presumption* that Torda *intended* that she be the beneficiary and receive the proceeds.

As discussed below, Kasanof's arguments do not survive legal analysis under Massachusetts law and are contrary to the plain language of the Agreement. Kasanof's invocation of what Torda *"intended"* by his failure to effectuate a change of beneficiary, raises an issue of fact that is not included in her Statement of Undisputed Facts and not supported by any reference to the record. Furthermore, Kasanof's unsupported factual assertion is inconsistent with Kasanof's argument that her Motion is subject to determination as a matter of law.

A.    **A Genuine Issue of Material Fact May Exist Regarding the Source of the Benefits Claimed; Therefore Kasanof's Motion is Premature and Should be Denied**

The benefits in dispute in this litigation are the proceeds of Torda's (a) life insurance policy, (b) IRA,[2] and (c) annuities. Kasanof asserts as undisputed fact that the

---

[2] Based upon the fact that TIAA-CREF did not interplead in this action on the IRA, only the annuities and the life insurance, the Plaintiffs do not believe the IRA at issue is held by TIAA-CREF. Upon information and belief, the IRA is held by Smith Barney.

life insurance policy, IRA and annuities were *all* obtained by Torda "as an incident of his employment," Kasanof Statement of Undisputed Facts, ¶¶5, 7. Without any explanation as to why she bases her legal arguments on Massachusetts law as opposed to Federal law, Kasanof goes on to cite various Massachusetts cases as grounds for her entitlement. Kasanof does not explain what is meant by the use of the phrase, "as an incident of his employment," to describe the source of the benefits at issue. The meaning of this phrase and the facts concerning how and from whom Torda acquired these benefits, however, have significant legal ramifications.

If, by this description, Kasanof intends that Torda acquired the benefits as part of an ERISA-covered employee benefit plan, then the determination of her claims must be decided in accordance with federal law and the ERISA regulatory scheme, 29 U.S.C.A. §1001 *et seq.*, which preempts state law. <u>Metropolitan Life Insurance Company v. Flinkstrom</u>, 303 F.Supp.2d 34 (D.Mass.2004). However, if "as an incident to his employment" is intended to mean that the benefits were merely obtained in connection with Torda's employment, but were not part of an ERISA-covered employee benefit plan, then Kasanof's claims would be decided in accordance with Massachusetts law on contracts.

As of the filing of Kasanof's Motion for Partial Summary Judgment, the parties had not engaged in any discovery, or even exchanged the initial disclosures required by Rule 26 of the Federal Rules of Civil Procedure. *See* Exhibit "1". Kasanof's assertions as to these purportedly undisputed facts regarding the benefits are not supported in her Motion by any reference(s) to pleadings, affidavits or other documents. Thus, at this juncture, the Plaintiffs lack the requisite information - - information one would expect to

6

become available in the course of discovery - - upon which to base an informed response as to their agreement or disagreement with such facts. The Plaintiffs should not be required to agree or dispute these facts concerning the nature and/or source of the benefits at issue - - facts that may have significant legal ramifications - - based solely upon the unsupported statements of Kasanof in her Motion. Furthermore, Kasanof supplies no explanation or definition as to the meaning of the phrase, "as an incident to his employment." Thus, the Plaintiffs have no choice but to dispute these facts.

Accordingly, the Plaintiffs respectfully submit that Kasanof's Motion should be denied on the grounds that: (a) a genuine issue of material fact may exist as to the nature and/or source of the benefits; (b) this factual distinction is germane as to whether state or federal law should be applied to deciding the issues raised herein; (c) ascertainment of these facts is necessary to ensure that a decision on the issues raised has an appropriate basis in law; (d) the Motion, therefore, is premature, at best, and, (e) as set forth below, even if the Court declines to deny Kasanof's Motion on the foregoing grounds, the Plaintiffs submit that Kasanof's Motion does not survive analysis under Massachusetts law, the body of law upon which Kasanof relies as authoritative for determination of entitlement to all of the benefits at issue herein.

**B.    Assuming, Without Conceding, as Kasanof Argues, That The Benefits At Issue Are Non-ERISA Benefits, Kasanof's Motion for Summary Judgment Still Fails**

Without citing facts or legal authority, Kasanof has assumed that all of the benefits at issue are governed by Massachusetts law. However, even assuming for purposes of this argument only, that Kasanof is correct and Massachusetts law controls, the Plaintiffs submit that summary judgment should not be granted to Kasanof because

Massachusetts law does not support Kasanof's claims. Kasanof's legal arguments are addressed below in the order presented in her Memorandum.

(i)    **Kasanof first posits that, "The Massachusetts courts have repeatedly and unambiguously held that a separation agreement or divorce judgment in which there is a general waiver of claims on the spouse's assets or estate does not waive the other spouse's entitlement to insurance or pension proceeds unless there is an explicit reference to insurance or pension rights."[3]**

In support of the argument set forth above, Kasanof cites <u>Wennett v. Capone</u>, 1996 WL 91931 (Mass.Super. Feb 29, 1996); <u>Stiles v. Stiles</u>, 21 Mass.App.Ct. 514, 515 n.3 (1986); and <u>Cowan v. Sullivan</u>, 48 Wash.2d 680, 682 (1956). The Plaintiffs submit that none of these cases stand for the proposition for which they are cited.

<u>Wennett</u> dealt with pension benefits regulated by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001, *et. seq.*, with respect to which an extensive body of federal law has developed to determine entitlement. <u>Wennett</u>, *supra* at 2. Since Kasanof is basing her legal arguments on Massachusetts law, <u>Wennett</u> is inapplicable to the instant matter because it is decided based upon federal law governing ERISA. Moreover, the facts of the instant matter are clearly distinguishable from those of <u>Wennett.</u> In <u>Wennett</u>, the parties' divorce agreement contained specific references to the retirement benefits at issue; in the matter at hand the Agreement is silent. In <u>Wennett</u>, the court noted that, "the language of the divorce decree in the present case is even more specific than in the <u>Fox Valley</u>[4] decree, in that it names the specific plans to which [the defendant] waived her rights. Accordingly, the waiver is specific and thus is effective." <u>Wennett</u>, *supra*, at 5. The <u>Wennett</u> decision, like the <u>Bergeron</u> decision discussed below,

_____

[3] Kasanof Memorandum, at 3.
[4] <u>Fox Valley & Vicinity Const. Wrkrs. Pension Fund v. Brown</u>, 897 F.2d 275 (7th Cir.1990), *cert. Denied*, 498 U.S. 820 (1990), *rehearing denied*, 498 U.S. 993 (1990). <u>Fox Valley</u> also involved ERISA benefits.

is based upon the specific language in the parties' agreement in each case. <u>Wennett</u>, like <u>Bergeron</u>, does not set a minimum standard for what language is required in a separation or divorce agreement to constitute a valid waiver. Similarly, neither <u>Wennett</u> nor <u>Bergeron</u> forecloses the finding of a valid waiver in a case, such as the instant matter, in which there is no specific reference to the benefits in the Agreement.[5]  Therefore, the <u>Wennett</u> analysis is not applicable in the case at bar in which the benefits are assumed to be governed by Massachusetts law and the facts of the cases are dissimilar.

Kasanof also relies on <u>Stiles v. Stiles</u>, 21 Mass.App.Ct. 514 (1986).  At issue in <u>Stiles</u>, were retirement benefits governed by G.L. Chapters 29 through 32, the State Retirement system. Like ERISA, the State retirement system is a detailed statutory scheme that provides its own separate framework and rules for construction and determination of entitlement to benefits.  The claims in <u>Stiles</u> did not arise in connection with a separation or divorce judgment, but from the State employee's failure to change the beneficiary designation from his ex-wife to his second wife in accordance with very specific statutory procedures. As such, <u>Stiles</u> is also inapplicable to the instant matter.

Finally, Kasanof cites <u>Cowan v. Sullivan</u>, 48 Wash.2d 680 (1956).  In that case, the Supreme Court of Washington was called upon to determine entitlement to life insurance proceeds *in the absence of either a separation agreement or a divorce judgment* from which the court could determine the parties' intent with regard to distribution of the proceeds.  Analysis of the parties' intent where, unlike here, there is no separation agreement or other similar document, is a wholly different pursuit.  Therefore, <u>Cowan</u> also fails to provide any guidance as to the matters before the Court.

---

5 On the facts of the instant matter, the Plaintiffs respectfully submit that <u>Foster v. Hurley</u>, 61 Mass.App.Ct. 414 (2004), discussed below, is particularly instructive.

None of the aforementioned cases cited by Kasanof stand for the proposition that the Massachusetts courts hold that a general waiver in a separation agreement does not encompass unspecified life insurance and annuity benefits.

**(ii)    Next, Kasanof contends that "where, as here, the beneficiary remains unchanged, it is _presumed_ that the covered spouse _intended_ to benefit the surviving spouse notwithstanding the divorce."** [6]

In support of the argument set forth above, Kasanof cites Bergeron v. Leslie, 2000 WL 537273 (Mass.Super. 2000) and Stiles, _supra_. Again, these cases do not assist Kasanof.

The decision in Bergeron, however, is diametrically opposed to the legal proposition for which Kasanof cites Bergeron - - that the failure to effectuate a change of beneficiary in the context of a divorce or separation agreement, compels the _presumption_ that the spouse failing to make such change _intended_ that the ex-spouse still receive the benefits, regardless of the terms of the separation agreement.[7] By stark contrast, the court in Bergeron held that the husband's failure to change the names on bank accounts that, prior to the parties' divorce, had been in both names, was not fatal to the husband's claim to the funds. As grounds for their decision, the court stated - - but without setting a minimum standard for effectuating in a separation agreement a waiver of any beneficial interest in benefits - - that the language of the parties' divorce settlement agreement was "_clear enough_" to establish that the wife had waived her rights and interest in such accounts. Bergeron, _supra_, at 2.[8]

---

[6] Kasanof Memorandum, at 2 (Emphasis added.).
[7] This proposition is also contrary to Foster v. Hurley, 61 Mass.App.Ct. 414 (2004), discussed below in §C.
[8] In Bergeron, the dispute arose solely on the basis of whether the husband's failure to change the names on the accounts in accordance with the separation/divorce agreement, despite the terms of the agreement, meant he relinquished his right to sole possession of the accounts.

In this regard, Kasanof refers to a general rule set forth in a footnote in <u>Stiles</u>, and reiterated in <u>Bergeron,</u> that, "a 'divorce does not revoke a designation of beneficiary.'" [9] By its express terms, this statement in <u>Stiles</u> is limited to those cases in which the parties are *divorced*, and has no applicability to the instant case, where Torda died before he and Kasanof were divorced. Accordingly, this statement in <u>Stiles</u> does not apply to the facts of the instant matter and Kasanof's reliance thereon is misplaced. Here, we are dealing not with divorce and its legal aftermath, but with a separation agreement - - an independent contract freely entered by he parties, both of whom were represented by counsel prior to their divorce. In fact, the <u>Bergeron</u> case supports the Plaintiffs' position that a change of beneficiary is not necessary where the separation agreement, as in this case, is "clear enough" regarding the parties' division of property.

> **(iii)    The next argument advanced by Kasanof is that, "Massachusetts has also previously held that life insurance (at least with respect to term coverage) is not an <u>asset</u> in the context of an injunction forbidding the conveyance or encumbrance of marital assets."[10]**

For this assertion, Kasanof relies on <u>Gleed v. Noon</u>, 415 Mass. 498 (1993). As in <u>Stiles</u> and <u>Cowan,</u> <u>Gleed</u> did not involve a voluntary separation agreement between the parties. Rather, the issue in <u>Gleed,</u> which arose in the context of a contempt proceeding, was whether the husband had violated the terms of a temporary restraining order issued by the probate court during the pendency of the divorce action. <u>Id.</u> Pursuant to the temporary order, the parties were restrained from "withdrawing, transferring, conveying, assigning, spending, encumbering, pledging, bequeathing or otherwise divesting themselves of any assets in which they have acquired an interest during their marriage to

---

[9] Kasanof Memorandum, at 3.
[10] Kasanof Memorandum, at 4 (Emphasis added.).

11

each other and which are subject to division by [the Probate Court] in accordance with [G.L. c. 208, §34]." Id., *supra,* at 499 (Emphasis added.).

In reaching its conclusion that the husband had not violated the temporary restraining order, the court in Gleed distinguished between the actions specifically prohibited by the order, and the making of a beneficiary change, which was not specifically prohibited by the order. Id., at 500:

> Absent a specific court order preventing or prohibiting beneficiary change, the decedent had the right to change the beneficiary designation on the pension plan, IRA, and the life insurance policy while retaining ownership in compliance with the injunction. (Emphasis added.)

Id..[11] The court did not base its decision, as Kasanof suggests, on a finding that life insurance benefits are either not assets that are beyond the scope of G.L. c. 208, §34. Indeed, for the court to have concluded that life insurance benefits are not "assets" would be in direct conflict with the express language of G.L. c. 208, §34, which provides:

> In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and non-vested benefits, rights and funds accrued during the marriage and which shall include but not be limited to, retirement benefits, military retirement benefits if qualified under and to the extent provided by federal law, pension, profit-sharing, annuity, deferred compensation and insurance. (Emphasis added.)

Gleed recognized that the designation of beneficial interests to a life insurance policy is a matter clearly within the jurisdiction of the Probate Court and is consistent with the frequent exercise by the Probate Courts of its authority to assign insurance benefits and/or require one spouse to obtain or maintain life or other insurance for the benefit of the other spouse. Foster v. Hurley, 61 Mass.App.Ct. 414 (2004); *see also* Green v. Green, 13 Mass.App.Ct. 340, 342-343 (1982).

---

[11] This distinction was recognized in Foster v.Hurley, 61 Mass.App.Ct. 414, 419 (2004).

Moreover, in <u>Edinburg v. Massachusetts Mutual Life Insurance Co.</u>, 22 Mass.App.Ct. 923, 924-925 (1986), which involved facts similar to those of <u>Gleed,</u> the court held that the husband, who changed the beneficiaries on his life insurance policy, did not violate a restraining order prohibiting the transfer of "'any and all intangible personal property' in which either party [to the divorce] had any legal or beneficial interest[,]" because husband made such change before the restraining order was entered by the court. <u>Id.</u>[12] Contrary to Kasanof's argument, neither <u>Edinburg</u> nor <u>Gleed</u> stand for the proposition that a legal and/or beneficial interest in life insurance is not within the meaning of personal property contemplated by G.L. c. 208, §34 and properly encompassed by a voluntary separation agreement. Kasanof's reliance on <u>Gleed</u> is, therefore, misplaced, and any argument that Kasanof is entitled to the life insurance proceeds because, as a matter of law, such proceeds are not a proper subject of the Agreement, has no merit.[13]

---

[12] *See also* <u>Canter v. Comm'r of Public Welfare</u>, 423 Mass. 425, 428 (1996) (Assets include "...life insurance,...and <u>any other</u> real or personal property"); <u>May v. Brewster</u>, 187 Mass. 524 (1905).
[13] The Plaintiffs suspect that Kasanof attempts to make this argument as a defense to the numerous references to and express incorporation of G.L. c. 208, §34 in the Agreement. *See e.g*, (emphasis added):

"Each party has carefully considered the income, financial resources, contributions to the marriage, and liabilities and expenses of himself or herself and of the other **and all other factors enumerated in M.G.L. Ch. 208 Section 34.**" (Agreement, Statement of Facts, ¶7);

"This Agreement is made in order to settle and determine: (a) Whether and to what extent payments for support and maintenance should be made to the Husband or Wife; (b) **Whether and to what extent all or any part of the estate of the Husband or Wife should be assigned to the other in consideration of the provisions of Massachusetts General Laws Ch. 208 s.34;** and (c) All other rights and obligations arising from the marital and parental relationship. (Agreement, Statement of Facts, ¶9);

"**In light of Massachusetts General Laws, Chapter 208, Section 34**, the parties acknowledge that they each have rights in the other's individually owned assets, and that the provisions of this Agreement comprise an equitable distribution of the marital estate **in accordance with the provisions of the aforesaid statute.** The Husband and Wife each hereby waive all claims and rights they may have against the other party for support of any kind from the other party, separate maintenance or alimony, and further waive all claims and rights they may have under **Massachusetts General Laws, Chapter 208, Section 34, as amended,** intending that their only rights shall be those set forth herein....Upon the execution of the within Agreement, the Husband's and Wife's obligations to the other for alimony, support, transfer, conveyance,

(iv)   **Kasanof also argues, for reasons that are not clear, that the 1990 Amendment to G.L. c. 208, §34 did not change prior law but merely codified it.**[14]

The 1990 Amendments amended §34 by adding to the second sentence, the clause, "including but not limited to, <u>all vested and nonvested benefits, rights and funds</u> accrued during the marriage and which shall include, but not be limited to, retirement benefits,…pension, profit-sharing, annuity, deferred compensation and insurance." St. 1990, c. 467 (Emphasis added). From this amendment, Kasanof extrapolates, though without supporting citation, that, "The statutory change, therefore, did not remove the necessity of specifying any renunciation of an interest in insurance or pension proceeds in the divorce judgment or settlement agreement."[15]

Building on the foregoing unsupported argument, Kasanof further argues that because insurance and pension benefits are not present assets but merely conditional expectancies, the failure (a) to specifically exclude the former spouse's interest (presumably in the separation agreement) *or* (b) to change the beneficiary designation, "is taken as *proof* of his intention to benefit the (former) spouse."[16] For this argument Kasanof cites <u>Gleed</u>, *supra;* <u>Paige v. Paige</u>, 1999 WL 1319004, a Massachusetts Superior Court case;[17] and, <u>Lindsey v. Lindsey</u>, 492 A.2d 396 (1985), a Pennsylvania Superior

---

gift, assignment **or other obligations under Massachusetts General Laws, Chapter 208, Section 34,** shall cease entirely and the Husband and the Wife shall forever be discharged with respect thereto. The Husband and the Wife each declare, state, represent, and acknowledge **that they are each aware of their rights under Massachusetts General Laws, Chapter 208, Section 34, as amended,** and the Husband and the Wife each accept the covenants of the other party contained in the within **Agreement as complete satisfaction of their rights thereunder."** (Agreement, Exh. E).

[14] Kasanof Memorandum, at 4.

[15] <u>Id.</u>

[16] Kasanof Memorandum, at 4.

[17] The issue in <u>Paige</u> was the validity of a husband's change of beneficiary on his life insurance policy made *before* his wife had even filed the divorce action. The change was made in the absence of any separation agreement or court order preventing the husband from making such change and the court upheld the husband's right to do so. Nowhere in the decision did the court suggest that if the husband had not

14

Court case, While they may stand for the proposition that a beneficiary's interest is conditional, there is nothing in any of these cases that even remotely supports Kasanof's contention that Torda's failure to effectuate a formal change of beneficiary constitutes *proof*, despite the plain language of the separation agreement to the contrary, that he *intended* Kasanof to receive the benefits at issue. Nor is there any support elsewhere in Massachusetts law for this contention.

> (v)    **Next, Kasanof contends that because Torda was represented by counsel in the negotiation attendant to the separation agreement, he "must be *presumed* to have known that in order to exclude [Kasanof] from an interest in the insurance proceeds he was required either to include an express waiver in the agreement or to change the beneficiary."[18]**

Kasanof cites no legal authority to validate such a legal presumption. Moreover, *both* Torda *and* Kasanof were represented by counsel in the connection with the Agreement. Agreement, Statement of Facts, ¶6. The Agreement must stand for itself. Both parties were represented by counsel; both parties had the opportunity to include the alleged conditions in the Agreement. If the parties had intended any other specific provisions or conditions to apply or control, they would have been stated in the Agreement.

Moreover, following Kasanof's reasoning, it follows that it was incumbent upon Kasanof to affirmatively include a provision in the Agreement requiring Torda to maintain her as beneficiary of his life insurance, annuities and IRA. The Agreement specified other assets that were to be transferred to Kasanof (Agreement, Exhibit C), as well as medical insurance that Torda was required to maintain for her benefit

---

changed the beneficiary designation, it would have been deemed, as a matter of law, to be *proof* that he intended the soon to be ex-wife to remain as beneficiary.

[18] Kasanof Memorandum, at 4.

(Agreement, Exhibit B). If Kasanof believes that the inaction of Torda proves that he intended that she benefit, then the parties would have negotiated a provision that Torda take no action to remove her as beneficiary. Since there was no affirmative duty imposed upon Torda to maintain Kasanof as beneficiary, it follows from Kasanof's argument that Torda could not have intended that his soon-to-be ex-wife would remain as beneficiary as he did not agree to this in the Agreement.

Kasanof also claims, without any factual corroboration or reference to the record, that Torda "did not make any *attempt* to [change the beneficiary]" before his death. Id., at 4-5. As Kasanof does not cite any legal authority for this position, and there is nothing in the Agreement to support her contention. Moreover, this factual assertion may be disputed as discovery unfolds, as change of beneficiary forms were found among Torda's papers by the Special Administrator of the Estate and which may very well evidence an "attempt" by Torda to change beneficiaries prior to his untimely death, if the fact of whether or not Torda's attempted to change the beneficiary is in any way relevant. *See* Exhibit "2".

Kasanof's concludes her argument by stating: "Massachusetts law remains clear on this issue: the failure *either* to include a specific waiver of the spouse's interest *or* to change the beneficiary is taken as *proof* that no such change or waiver was *intended*. As a matter of law, [Kasanof] is entitled to the entire proceeds of the life insurance policy and the designated portion of the pension benefit."[19] For the reasons set forth above regarding the law cited by Kasanof and set forth below regarding the Massachusetts law applicable to the facts of this case, the plaintiffs respectfully submit that this argument is erroneous

---

[19] Kasanof Memorandum, at 5.

and offends time-honored principles of contract law and probate law. Clarendon Trust v.

Dwek, 970 F.2d 990 (1st Cir. Mass.1992)(applying Massachusetts law) (An unambiguous

contract must be enforced according to its terms); Simons v. American Dry Ginger Ale

Co., 335 Mass. 521, 523 (1957) (To be enforceable, an agreement requires no greater

precision than that the essential elements are sufficiently definite to enable ascertainment

of the parties' respective rights and obligations.); Bergeron, *supra*, at 2 (The language of

the separation agreement was "clear enough" to establish the wife's waiver of rights.).

### C.  The Legal Standard Under Massachusetts Law Applicable to the Issues Raised by Kasanof's Motion for Partial Summary Judgment

If there are no material facts in dispute in this case, and Massachusetts law is

deemed to control, then summary judgment should enter in favor of the Plaintiffs.  Under

Massachusetts law, a separation agreement should be "specifically enforced on the same

basis as any other contract." 3 Massachusetts Practice Series, Family Law and Practice,

§71:18 (3d ed.), *citing* Peters v. Wallach, 366 Mass. 622, 628 (1975); Stansel v. Stansel,

385 Mass. 510, 515-516 (1982); Knox v. Remick, 371 Mass. 433, 436-437 (1976);

Osborne v. Osborne, 384 Mass. 591 (1981). The law requires "no greater precision to

make a contract enforceable," 3 Massachusetts Practice Series, Family Law and Practice,

§71:18 (3d ed.), *citing* Simons v. American Dry Ginger Ale Co., 335 Mass 521, 523

(1957), than that the "essential terms of the agreement are sufficiently definite so that the

nature and extent of the obligations of the parties can be ascertained." Id.  Thus, a

separation agreement that, by its terms, fixes the mutual financial and property rights and

obligations of the parties, is valid, binding and specifically enforceable, Dominick v.

Dominick 18 Mass.App.Ct 85 (1984), and operates as a bar to any claims inconsistent

with its terms. 3 Massachusetts Practice Series, Family Law and Practice, §71:18 (3d

ed.). Moreover, "[t]he courts have continually stressed the rights of the parties in a divorce case to determine their own fate by contract even if their settlement varies from that which a judge would impose..." 1 Massachusetts Practice Series, Family Law and Practice, §8:8, *citing* <u>Knox</u>, *supra*, at 437-438. Accordingly, "complete and permanent separation agreements, freely entered into by parties contemplating a divorce, are favored by the public policy of Massachusetts and generally are enforceable, absent 'countervailing equities.'" <u>Pavluvcik v. Sullivan</u>, 22 Mass.App.Ct. 581, 584 (1986).

Where, upon examination of the plain language of the separation agreement as a whole, and within the context of its execution, the court concludes that the parties intended the agreement to be a full and final expression, division and/or distribution of their respective property, rights, and obligations as husband and wife, the court is bound to enforce said agreement, including any waiver provisions contained herein, provided that the waiver terms are "clear enough" to enable the court to ascertain the intent of the parties. <u>Id.</u>, at 584; *see also* <u>Bergeron v. Leslie</u>, 2000 WL 537273 (Mass.Super.) (2000).[20] In addition, the parties to a separation agreement are free "to contract a different property division that than which the court would decree" under G.L. c. 208, §34. 1 Massachusetts Practice Series, Family Law and Practice, §8:8 (3d ed.); <u>Knox</u>, *supra*, at 437-438; <u>Dominick</u>, *supra*; <u>DeCristofaro v. DeCristofaro</u>, 24 Mass.App.Ct. 231, 235 (1987), *rev. denied* 400 Mass. 1104 (1987).

---

[20] In <u>Metropolitan Life Insurance Company v. Flinkstrom</u>, 303 F.Supp.2d 34, 41 (D.Mass.2004), the First Circuit's formulated this test as: "when a court 'evaluat[es] whether [a] waiver is effective in a given case, [it should be] more concerned with whether a reasonable person would have understood that she was waiving her interest in the proceeds or benefits in question than with any *magic* language contained in the waiver itself.'"

It is clear from the language of the Agreement in this case that the parties intended the Agreement to "wipe the slate clean,"[21] and "settle and determine" (a) whether and to what extent either party may be required to pay alimony; (b) whether and to what extent "all or any part of the estate of the Husband or Wife should be assigned to the other in consideration of the provisions of Massachusetts General Laws Ch. 208 s.34; and (c) All other rights and obligations arising from the marital and parental relationship." Agreement, Statement of Facts, ¶9 (Emphasis added.). The parties also expressly stated:

> The Husband and Wife agree that, in executing this Agreement, there have not been made, and that they have not relied upon, any promises, warranties or representations except as are expressly contained herein. No oral statement or prior written matter, extrinsic to this Agreement, shall have any force or effect.[22] The Husband and Wife have incorporated into this agreement their entire understanding, and they each agree to the provisions set forth in this Agreement in full satisfaction and discharge of all claims, past, present and future, which either party may have against the other, and which in any way arise out of the marital relationship. Agreement, Article IV (Emphasis added.).

In Agreement further provides:

> There are annexed hereto and hereby made a part of this Agreement Exhibits A, B, C, D, E. and F. It is understood and agreed by the Husband and Wife that the provisions contained in said Exhibits are in complete and final satisfaction of the respective rights and liabilities of the parties… Agreement, Article X, (Emphasis added.)

Moreover, in Exhibit C to the Agreement, the parties enumerate the specific items of real and personal property to be distributed pursuant to the Agreement, stating:

> The marital residence has been sold and the parties have equitably divided the net proceeds.

---

[21] See Vasconi v. The Guardian Life Insurance Company of America, 590 A.2d 1161 (N.J. 1991).
[22] By including this clause in their Agreement, the parties emphasize that their rights, entitlements and obligations are clearly circumscribed by the four corners of the Agreement. Any prior written beneficiary designation, therefore, has no continuing force or effect upon execution of the Agreement.

> The parties have divided all their personal property. The Husband agrees to ship the two portraits of the Wife to her brother in Connecticut. The Wife agrees to pay the shipping charges. The Wife agrees to return her engagement ring to the Husband.
>
> The Parties shall retain all assets which are held in their name. The Husband shall pay $2,000.00 to the Wife for her equity in her automobile once she has transferred title to the Husband.

Furthermore, language of waiver appears in a number of the Articles and Exhibits of the Agreement, including but not limited to:

> Article II.    WAIVER OF ESTATE CLAIM
>
> A. Except as provided herein, the Husband and Wife each hereby waives any right at law or in equity to elect to take against any last Will made by the other, including all rights of dower or courtesy, and hereby waives, renounces and relinquishes unto the other, their respective heirs, executors, administrators, and assigns, all and every interest of any kin [sic] or character which either may now have or may hereafter acquire in or to any real or personal property of the other, whether now owned or hereafter acquired by either.

The Plaintiffs also refer the court footnote 9, above, in which the entire text of Exhibit E, entitled Satisfaction of Rights, is set forth and which further serves to underscore the global nature of the Agreement, the finality of its terms, and the express waivers of all claims by both parties.

Accordingly, the specificity of the division of property, the integration clause (Article IV) and the numerous references throughout the Agreement to its all-encompassing scope and finality, compel the conclusion that the waiver language throughout the Agreement precludes Kasanof from making the claims for benefits asserted herein. Where the parties take pains to enumerate specific items included within an Agreement, and to expressly state that neither party may make a claim to anything not so specifically included, then, under the maxim of *expressio unius est exclusio alterius*,

neither party may claim entitlement to anything not expressly designated to him or her in the Agreement. Chatham Pharmaceuticals, Inc. v. Angier Chemical Co., Inc, 347 Mass. 208 (1964); Laurin v. Providence Hospital, 150 F.3d 52 (1998).

The very question at issue in the instant matter - - whether the language of the parties' separation agreement, which contains *no specific reference* to the benefits claimed, is sufficient to determine whether one party has waived his or her entitlement to the proceeds of such benefits - - was addressed in Foster v. Hurley, 61 Mass.App.Ct. 414 (2004), and was noted by the Appeals Court to be "[l]acking in controlling Massachusetts precedent." Id., at 417. In Foster, the court found that whether or not a change of beneficiary is effectuated is not the determinative factor in assessing entitlement to the proceeds of a life insurance policy where the parties have fully addressed their respective rights and entitlements in the separation agreement. Id. This analysis, the Foster court held, applies not only where the beneficiary designation has not been changed, but also, as in the instant matter, where the policy or benefit at issue has not been specifically identified in the separation agreement. Id., at 420.

In Foster, the Appeals Court recognized other decisions in which the separation agreement contained specific reference to the policy or benefits at issue, but declined to interpret those cases as stating the minimum requirement for determination of entitlement pursuant to the separation agreement. Id. The court specifically rejected the argument, based upon Gleed, *supra,* that because there was nothing in the separation agreement expressly prohibiting the change of beneficiary, such a change was permissible, and stated that "...Gleed does not control here. Id. Rather, where the language of the separation agreement examined as a whole is "sufficiently clear and unambiguous,"

21

neither the presence nor the absence of specific language in the separation agreement is

controlling, and the terms of the separation agreement "prevail over...a gratuitous change

in beneficiary." <u>Foster v. Hurley</u>, 61 Mass.App.Ct 414 (2004).[23]  Thus, <u>Foster</u> is

instructive on precisely the issue that <u>Wennet</u>, <u>Bergeron</u> and the other cases cited by

Kasanof do not address.

     <u>Foster</u> is consistent with the decision of the Supreme Court of New Jersey in

<u>Vasconi v. Guardian Life Insurance Company</u>, 124 N.J. 338 (1991).  In <u>Vasconi</u>, the

court held that in the case of

> a property-settlement agreement that purports to settle "all questions
> pertaining to [the spouses'] respective interests in distribution of the
> marital assets," the proceeds of a life insurance policy subject to the
> lifetime control of one spouse <u>should ordinarily be considered as
> encompassed within the terms of the settlement agreement.</u>  Such a
> settlement agreement and waiver of interest in the property of the
> deceased spouse should be regarded as <u>presumptively</u> <u>revoking</u> the non-
> probate transfer of the insurance proceeds to the surviving ex-spouse
> beneficiary. (Emphasis added.)

<u>Id.</u>, at 346.[24]  *Accord,* <u>Hollaway v. Selvidge</u>, 548 P.2d 835, 839 (1976) (The Supreme

Court of Kansas held: "It is well-settled that as part of a separation or property settlement

---

[23] *See also,* 31 A.L.R. 4th 59, §2 (1984): Where the waiver language in the separation agreement does not
specifically mention a life insurance policy, "courts have taken the position, as in other contract cases, that
the question whether [the] agreement affects the right of the divorced [or divorcing] spouse to recover
insurance proceeds as the designated beneficiary may be resolved by resort to construction of the
agreement itself to ascertain the parties' intent."  In so doing, "the primary rule of construction of a
settlement agreement is that, if possible, the court must ascertain and give effect to the mutual intention of
the parties at the time of the contract was made." <u>Id.</u>

[24] The <u>Vasconi</u> court addressed a situation very similar to that at issue herein - - where the spouse, who, by
the terms of the separation agreement, retains full control over a life insurance policy to which no specific
reference was made in the separation agreement, and on which the former spouse was the named
beneficiary prior to the separation agreement, dies before effectuating a formal change of beneficiary
subsequent to the separation agreement and the former spouse/still-named beneficiary seeks to collect the
proceeds of the life insurance policy despite the terms of the separation agreement. 124 N.J. 338, at 339.

agreement a wife may...contract away her right to claim insurance proceeds from policies on her husband's life in which she is the named beneficiary[25] ...[where the parties] "broadly agreed to settle all rights and claims between them and each relinquished all right title and interest in the property of the other."); Lelux v. Chernick, 694 N.E.2d 471 (1997) (The language of the separation agreement was sufficient to eliminate husband and wife as beneficiary of the other, *even without specific language*, where the expression to waive all rights was unequivocal.) Thus, where the separation agreement provides that the parties "waive generally all interest in each other's estate in the event of death," the lack of specific reference to the policy in the separation agreement does not provide a basis for reaching the inequitable result of allowing the named beneficiary, whose interests in the proceeds are clearly contradicted by the terms of the separation agreement, to recover. Id., at 339. Rather, "the plain meaning of the property-settlement agreement and the probable intent of the decedent" govern how the proceeds of the insurance policy should be allocated. Id.

In the instant matter, the parties lived together as husband and wife for only two years. Agreement, Statement of Facts, ¶1. There were no children born of the marriage, id., ¶4, and each party acknowledged his/her ability to be self-supporting. Id., at Exhibit A. As set forth above, the Agreement clearly states that: (a) it was made and entered into so as to *finally determine and settle all claims*, of any nature, that each may have against the other, past, present and future, that in any way arises out of their marital relationship; (b) the parties would have "only such rights and obligations as are specifically provided

---

[25] *See also* 44 Am.Jur. 2d (Rev), Insurance §1714; (A beneficiary may contract away her interest in the life insurance policy through a separation or property settlement agreement *even if* the beneficiary designation is not formally changed.); 31 A.L.R. 4th 59, §2 (1984), entitled, "Property Settlement Agreement As

for in [the] Agreement;" and, (c) each party waived all other rights and claims of every kind against the other party.

For Kasanof to now argue that she is entitled to the life insurance, pension, and IRA benefits flies in the face of the Agreement. To grant Kasanof the relief she seeks is to ignore that her claim contravenes the Agreement that she and Torda, with their respective counsel, freely negotiated as a final distribution of their marital property after their short-term (two year) marriage. While hindsight may provide a retrospective understanding, it cannot be employed to rewrite the plain provisions of the Agreement.

Based upon the plain meaning of the Agreement and applying common sense, the result should be clear: Torda intended that Kasanof receive her equitable share of the marital home proceeds, certain enumerated items, such as the paintings, cash for her car, and continued medical insurance. These specific property distributions and obligation were clearly spelled out in the Agreement, just as the provision that neither party would have any entitlement, claim or interest - - now or in the future - - to any property or claim of the other.

## IV. CONCLUSION

In summary, the material facts asserted by Kasanof in support of her Motion for Partial Summary Judgment:(a) are premised purely upon Kasanof's unsubstantiated, personal opinions and contentions; (b) are so vague and premature as to prevent the Plaintiffs from responding definitively; and, (c) upon information and belief, are subject to genuine dispute which can only be ascertained with confidence after the parties have engaged in discovery. Moreover, the Massachusetts law upon which Kasanof relies in

---

Affecting Divorced Spouse's Right to Recover as Named Beneficiary Under Former Spouse's Life Insurance Policy."

her Memorandum does not support the legal arguments advanced by Kasanof as justification for partial summary judgment in her favor.

For these reasons, the Plaintiffs respectfully submit that Kasanof's Motion for Partial Summary Judgment should be denied.

> Matthew Torda, Anna Torda,
> And Joseph Torda,
> By their attorneys,
> RUDOLPH FRIEDMANN LLP
>
> _____
> James S. Singer
> BBO # 464560
> 92 State Street
> Boston, MA  02109
> 617-723-7700

## Certificate of Service

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail on this __day of October, 2004.

> _____
> James S. Singer