UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10622-NMG

---

MATTHEW TORDA, ANNA
TORDA and JOSEPH TORDA,

     Plaintiffs,

v.

STEPHANIE SUZANNE KASANOF,
TEACHERS INSURANCE AND
ANNUITY ASSOCIATION OF
AMERICA, and COLLEGE
RETIREMENT EQUITIES FUND

     Defendants.

---



## RESPONSE OF DEFENDANT AND PLAINTIFF IN COUNTERCLAIM STEPHANIE SUZANNE KASANOF TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1.    <u>There is no need for discovery in order to decide the pending motion.</u>

In their introduction to their opposition to the defendant Kasanof's motion, at pages 1-2, the plaintiffs assert that the present motion cannot be decided before discovery is conducted in order to determine the origin of the decedent Torda's benefits, supposedly so that we may know whether their disposition is governed by federal or state law. This assertion is repeated in sub-argument A of their section entitled "Legal Argument & Discussion", at pages 5-7. The plaintiffs are incorrect. It makes absolutely no difference whether the decedent's benefits fall under ERISA or not, as is explained in the next portion of this memorandum. There is, therefore, no need for discovery on the point.

1

2.    Massachusetts law governs even if ERISA applies.

ERISA does indeed preempt state law on many issues, but not on this one. The first case cited by the defendant Kasanof in her original memorandum, *Wennett v. Capone*, 1996 WL 91931 (Mass. Super. 1996), reviews the line of federal cases including *Fox Valley & Vicinity Const. Wkrs. Pension Fund v. Brown*, 897 F.2d 275 (7th Cir. 1990), concerning the standard to be applied under ERISA to waivers of ERISA benefits under separation agreements. Following those cases, Judge Smith in *Wennett* concluded that federal courts would look to *Massachusetts* domestic relations law in order to resolve such a dispute, and proceeded to decide the matter based upon Massachusetts law. He went on to state that law as being that "a '[d]ivorce does not revoke a designation of beneficiary unless the matter is expressly touched upon in the divorce proceedings or the insurance contract so provides'", quoting *Stiles v. Stiles*, 21 Mass.App.Ct. 514,515, n.3 (1986). Applying that standard, he went on to find the waiver at issue sufficient, on facts different from (but nonetheless illuminating with respect to) those in the present case.

Lest these citations be thought less than dispositive, the plaintiffs, in their opposition, have supplied the definitive ruling by *this* Court (Tauro, J.) following *Fox Valley* and applying Massachusetts state law as the standard of federal common law. In *Metropolitan Life Insurance Company v. Flinkstrom*, 303 F.Supp. 2d. 34 (D. Mass. 2004), cited by the plaintiffs at page 6 of their opposition, Judge Tauro wrote that since there is no specific provision of ERISA governing the question, the courts, as a general rule, may look to state law in fashioning federal common law if it does not conflict with the underlying policies of ERISA. (303 F. Supp. 2d at 40-41) He went on to find that "The law of Massachusetts is not in conflict with the federal common law rule…," and

2

then cited the oft-quoted language from *Stiles. Ibid.*, n. 62. In the case before him, he found the waiver of benefits effective because it was voluntary, knowledgeable and "...there can be no question that the agreement specifically refers to Decedent's life insurance policy" since it required that it be made payable to the parties' four children. (303 F.Supp.2d at pp. 42-43.)

The plaintiffs have nowhere suggested that *Wennett, Flinkstrom* or *Fox Valley* are not conclusive on the issue; nor have they suggested any contrary authority. Rather, they have invoked the necessity of discovery to determine whether the benefits are or are not governed by ERISA. The question, however, is legally irrelevant.[1]

   3.   Massachusetts law requiring a specific waiver is clear.

*Stiles v. Stiles, supra.*, has been followed both in numerous Massachusetts cases and also in this Court in *Flinkstrom*. In *Bergeron v. Leslie*, 2000 WL 537273 (Mass. Super. 2000), Judge Hillman was faced with the question of whether the divorcing wife had waived an interest in certain joint bank accounts. Finding no case directly in point, he was "...guided by the law regarding a former spouse's right to recover life insurance in similar situations." 2000 WL 537273, p.2. In stating that law, he, too, quoted the same language in *Stiles* quoted by Judge Smith in *Wennett*. In finding the waiver in Bergeron effective, he wrote that "...the matter was specifically listed in the separation agreement. Both the award of the accounts, *itemized by account numbers* and the defendant's waiver to those assets...are clear enough...." *Ibid.* (Emphasis supplied.) He then cited *Wennett* with approval.

---

[1]   The plaintiffs cite *Wennett* and *Fox Valley* (page 8 of their opposition), but appear never to have read them. They seek to distinguish them on the ground that they involve federal law under ERISA and not Massachusetts law, and that the waivers in each case, being far more specific than those here, were effective.

The plaintiffs attempt to distinguish *Bergeron* (or, rather, stand it on its head) by saying that the judge there had not set "…a minimum standard for effectuating in a separation agreement a waiver of any beneficial interest in benefits…," but had employed a standard of "clear enough". (Plaintiffs' opposition, pp. 10-11). The studious refusal of the plaintiffs to recognize the high standard which the judge in *Bergeron* actually *did* employ—an express waiver, in this case one itemizing the bank accounts by account number—again suggests that they must be reading a different case.

In this connection, the plaintiffs attempt to distinguish *Bergeron* (and, inferentially, *Wennett)* on the further ground that in each of those cases, the separation agreement was followed by an actual divorce, whereas here the husband died after the separation agreement but before the divorce was heard. This is a meaningless distinction. In both cases, the judges have dealt interchangeably with the separation agreement and a divorce judgment. *Stiles* speaks not of a divorce, but of "divorce proceedings." While, like all such agreements, the present agreement chastely recites that it is not entered into in consideration of obtaining a divorce[2], it was entered into after the divorce complaint was filed, and it recites that it is to be submitted to the court in that action to be incorporated in the judgment (and to survive, as well). Surely it is part of the "divorce proceedings". Contrary to the plaintiffs' statement in their opposition (p.11), the rule in *Stiles* is *not* limited to situations where the parties are ultimately divorced.

There is no authority under Massachusetts law to treat an otherwise enforceable separation agreement—that is, one freely and knowingly entered into—differently if it is

---

[2]  Historically, an agreement to divorce was looked upon as against public policy and was thought an unlawful consideration to support such an agreement. One questions whether it would still be so considered.

or is not ultimately incorporated in a divorce judgment. Surely there is no logical basis for determining that language in the same agreement means different things if there is or is not, ultimately, a divorce. That, however, is precisely what the plaintiffs here argue. In *Wennett, Bergeron* and *Flinkstrom,* language in separation agreements which were ultimately incorporated in divorce judgments were tested by the *Stiles* standard—was the waiver of entitlements specific enough to be effective. The plaintiffs claim that, somehow, if by chance those agreements had not been succeeded by divorces—if, as here, one of the parties had died, for example—the language of those agreements would be tested by a different and more liberal standard. This proposition certainly does not recommend itself.

In part "C" of their argument (pages 17-24 of the opposition), the plaintiffs cite several Massachusetts cases standing for the proposition that a separation agreement is enforceable according to its plain terms like any other contract. The defendant Kasanof does not contest that this is indeed Massachusetts law. All of the cases which the plaintiffs cite, however, involve separation agreements followed by divorce judgments incorporating them.[3] (Some survive and some do not survive, but nothing in the cases appears to turn on this distinction.) As we know from Stiles and *Wennett* and *Bergeron* and *Flinkstrom*, however, any waiver of insurance benefits in those agreements, in order to be effective, would have to be specific in ways in which the agreement here is not. The enforceability of separation agreements in Massachusetts, relied upon by the

---

[3] In *Pavluvcik v. Sullivan*, 22 Mass.App.Ct.51 (1986), the agreement was approved by the judge and made a part of the divorce judgment, but the wife died during the (then) six month nisi period.

plaintiffs, is governed by the rule of interpretation in *Stiles*, and affords the plaintiffs no comfort.

Most separation agreements are succeeded by divorce judgments. Most divorcing spouses do not die between the execution of the separation agreement and the judgment of divorce. That this separation agreement should be subject to a different rule of interpretation because of the happenstance of the husband's death during that interval, is hardly self-evident. The plaintiffs have offered no reason for such a bizarre result.

4.     Conclusion.

For the reasons stated, the defendant Kasanof's motion for partial summary judgment should be granted.

By her attorneys,

Joel Z. Eigerman
BBO #152000
50 Congress Street, Suite 200
Boston, MA 02109
(617) 367-0014

Sandra Steele, Esq.
BBO #477900
44 School Street, 6th Floor
Boston, MA 02108
(617) 523-0666

October 19, 2004